STANDARD PLUNGER ELEVATOR CO. v. STOKES et al.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

No. 35.

PATENTS (§ 328*)—CONSTRUCTION—INFRINGEMENT.

United States patent No. 899,224, for a hydraulic elevator, in which the invention consisted of supplementing the force of the water pump by that derived from a water column, *held* not infringed by defendants' structure, comprising a compressed air exhaust tank with a short loop exhaust pipe containing a perpendicular water column of no considerable height, intended to operate only as a safety valve, and affording no considerable static pressure.

Appeal from the District Court of the United States for the Southern District of New York; Henry G. Ward, Judge.

Suit by the Standard Plunger Elevator Company, as exclusive licensee, against William E. D. Stokes and others, for alleged infringement of United States patent No. 899,224, granted September 22, 1908, to Thure Larsson, one of the defendants, for a hydraulic elevator. From an order awarding a preliminary injunction, defendants appeal. Reversed and remanded, with instructions to dismiss.

This cause came here upon appeal from an order awarding a preliminary injunction. Upon the hearing, by agreement of both parties, some additional documents were added to the record, and a stipulation entered into that the cause should be treated as if the appeal were from an interlocutory decree for injunction and accounting. The court approved the stipulation, and the cause will be disposed of in accordance therewith. The suit is the usual one for alleged infringement of United States patent No. 899,224, granted September 22, 1908, to Thure Larsson, one of the defendants, for a "hydraulic elevator." Complainant sues as the exclusive licensee.

L. W. Southgate, of New York City, for appellants.
C. V. Edwards, of New York City, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. There is a sharp controversy as to the interpretation to be given to certain written contracts between Larsson and the complainant or its predecessors. This branch of the case need not be discussed, since the defendants concede that they are estopped from denying the validity of the patent, and complainant concedes that

defendants are at liberty to contend for such a construction of the claims of the patent as will leave defendants' structure outside of the scope of those claims.

The structure covered by the patent is a hydraulic elevator of the direct-acting plunger type. In this type the car is mounted on a plunger or piston, which runs through a stuffing box into a cylinder. The cylinder is of sufficient depth to receive the plunger when the car is at its lowest level. The plunger is elevated by the action of water, which is forced into the cylinder under pressure by a pump. The water enters the pump from a storage tank, and, after being acted upon by the pump, passes into an air pressure tank, called a supply tank, from which it is fed into the cylinder by the operation of a valve worked by the elevator man. As shown in the patent, there is no air pressure in the storage tank. The elevator car rises under the action of this water thus forced into the cylinder till it reaches its upper level. When it descends, the plunger forces out the water in the cylinder, which then flows back into the storage tank—also sometimes called the exhaust tank, since it receives the water from the cylinder after it has done its work. In order to reduce the amount of power exerted to move the plunger and car, they are counterweighted. We may now consider the patent in suit.

The specifications state that, although it was quite practicable with short-run elevators to counterweight the car and plunger, so that the pump did not have too much work to do, there were serious difficulties and some unsafety in thus operating long-run elevators. "This is due to the fact that, in raising a long plunger and a comparatively heavy car, comparatively heavy weights are set in motion. This in itself would not be objectionable, if it were possible to counterweight plunger and car up to the full limit of weight, less the amount of weight required to start the unloaded car on its downward travel, which is the limit to which comparatively short-run, low-speed plunger elevators may be counterweighted." After pointing out why it is that long-run elevators cannot be counterweighted to the same limit as short-run ones, and showing the result of an over-counterweighted system of this kind, the patentee says:

"In the high-speed plunger elevator plants of over 200 feet run, which have already been practically installed, it has been found necessary to have a preponderance of weight in the plunger and car over the weight of the counterweight of nearly 3,500 pounds, and the efficiency of such elevators as heretofore installed has been decreased by the amount of power necessarily wasted in raising this unbalanced dead weight at each stroke of the elevator."

He then discloses the special object of the invention, which is to provide a water-circulating system for plunger elevators, in which a water column will be acted upon by the unbalanced weight of the plunger and the car during the downward movement of the elevator. By this means a certain amount of pressure will be stored for use at the next operation, which pressure will assist the operation of the pump, so that the amount of work to be actually performed by the supply pump will be diminished and a greater efficiency thus insured.

In prior systems, as the patentee says, the inlet and outlet pipes,

through which the water passes to and from the cylinder, were connected with the supply pump and storage tank in the basement or lower part of the building. Since there was no air pressure in the storage tank, and it stood substantially at the level of the outlet from the cylinder, there was nothing to impart pressure to the water in the storage tank or in the pipe running therefrom to the pump. In the invention disclosed, however:

"The inlet and outlet pipes extend up into the building for sufficient distance to form water columns to act as hereinafter described. At its upper end the outlet pipe is connected with a storage tank, and the water from the storage tank is pumped into an air-pressure tank. * * * Instead of having two separate water columns, and instead of locating the pump in the upper part of the building, I may employ a single water column, which is connected to the lower part of the storage tank. A water column thus located will aid the operation of the ordinary double-acting pumps employed in the usual elevator plants in the proportion that the static pressure of the water column bears to the working pressure required for the elevator. * * * In the operation of a plunger elevator, constructed according to my invention, the necessary preponderance of plunger and car over the counterweight will operate during the down stroke of the elevator to raise a water column, lifting a certain amount of water to the elevated storage tank, which will give a certain static head or pressure of water, which will diminish the amount of work required to be done by the supply pump."

After pointing out that a 250-foot run elevator plant, with a certain counterweight and plunger diameter, will require 200 pounds working pressure to secure the desired speed of operation, the patentee says:

"In direct plunger elevators as heretofore installed, this entire working pressure of 200 pounds is furnished entirely by the supply pump, while in an apparatus constructed according to my invention, *more than half the working pressure* will be supplied by the water column."

The drawings of the patent show the storage tank located at about the upper level of the moving car. In an illustrative diagram used on the argument, the storage tank itself is located near the lower level; but the pipe which connects the storage tank with the pump rises to a level so far above them before it turns to complete its connection that there is a column of water contributing the required static pressure in aid of the pump. Such an arrangement is manifestly an equivalent of the water circulating system of the patent. The claims read:

"1. In a hydraulic elevator system, the combination of a vertical cylinder, a plunger running in said cylinder, a car on the upper end of the plunger, a counterbalance for the greater part of the weight of the car and plunger, with the counterweight cables acting to offset the buoyancy of the plunger, a to-and-from pipe opening into the upper end of the cylinder, a storage tank connected thereto and located far enough above the upper end of the cylinder so that its static pressure will substantially balance the preponderance in weight of plunger and car over their counterbalance, a pressure tank, and a pump intermediate the storage tank and pressure tank; said parts being arranged so that the static pressure of the storage tank will assist the operation of the pump in raising the elevator.

"2. In an elevator system, the combination of a vertical cylinder, a plunger working therein, a car on the upper end of the plunger, a counterbalance for the greater part of the weight of the car and plunger, with the counterweight cables acting to offset the buoyancy of the plunger, a to-and-from pipe connected to the upper end of the cylinder, an elevated storage tank, an outlet pipe leading thereto, a pressure tank, a pump intermediate the pressure tank

and storage tank, an inlet pipe from the pressure tank to the to-and-from pipe, and a valve controlled from the car for connecting the to-and-from pipe with the inlet pipe and the outlet pipe as required."

These extended quotations taken from the patent show most clearly what it was that the patentee had in mind, what he disclosed, and what he has covered by the patent. He supplemented the force of the pump by coupling with it the force derived from a column of water. This, in scientific language and in common speech, is known as static pressure. It is the weight of the water. The static pressure of a column of water varies with its height. Roughly speaking, a pound pressure per square inch will be derived from each two feet of a water column. The patentee arranged his system of water circulation in such a way as to produce a column of water whose static pressure "would substantially balance the preponderance in weight of plunger and car over their counterbalance." Manifestly this water column must be of some substantial height; for, if it were not, it would not produce the pressure required.

In defendants' structure, which is complained of, the storage tank or exhaust tank contains compressed air, which is maintained at a constant pressure of 20 pounds. This sort of closed tank, where compressed air acts upon whatever water may be forced into it, was used in this art before Larsson's patent. To what extent this pressure is used by defendants towards supplementing the force of the pump in overcoming the unbalanced weight of plunger and car is immaterial. Defendants contend that it operates only to overcome the hydrostatic head of water in some of the cylinders below the top of those cylinders, and has done its work before the water from the pump begins to operate on the plungers. Some of these elevators start upwards from a plane 30 feet above the engine room floor. But if, as complainant contends, this pressure from the storage tank does operate to supplement the force of the pump, it is not static pressure, but fluid pressure, and the patent is strictly confined to static pressure, the pressure produced by the weight of a column of water. The patentee makes no use of any fluid pressure in the storage tank, and claims none.

There is a loop from defendants' exhaust or storage tank, which is an overflow pipe with a weighted valve set to blow off at 20 pounds, so that if that pressure be exceeded in the tank a portion of the water will escape. This loop does contain a perpendicular column of water, which, of course, exerts static pressure. The defendants contend that it (the blow-off) may never work for years in the operation of the apparatus, and that it has no function except to form a safety valve. But if some of this static pressure does reach the piston, it does not follow that the structure infringes. The defendants have no elevated tank, or elevated pipe leading from the tank—no water column of such a height as to secure pressure so great as materially to aid the pump. The whole teaching of the patent is that the column of water must be of considerable height. If it is not, it will not operate as the patent says it is intended to, because then its static pressure

would be so feeble as not to help the pump materially, which is the very thing sought. The specifications and drawings show a static pressure of 100 pounds to the square inch, which in the structure described therein gives a back pressure of over 3,400 pounds as against a preponderance in weight of plunger and car over counterbalance of about 3,500 pounds.

Defendants' little overflow pipe holds a column of only 18 inches in height. Even if the static pressure of that column does contribute at all to the force that moves the elevator, the amount of its contribution is too trivial and unimportant to constitute infringement.

The order is reversed, with costs to appellant, and the cause remanded to the District Court, with instructions to dismiss the bill, with costs.